Rabinak v. United Brotherhood of Carpenters Mr. Morales-Doyle The implausible claim of the employer in this case is that W-2 wage income paid to Mr. Rabinak for doing his job is not compensation. Instead, they're free to call it whatever they like. Just don't ask them any questions about why. Let me ask you though, I mean, you've agreed that this is a plan that gives the administrator discretion, so our review is for the arbitrary and capricious level. Correct. The plan itself says don't draw any inferences from what's on the W-2. It says something like, you know, even if such payments are considered income for tax purposes, so it's signaled that income for tax purposes isn't the same as capital C compensation for plan purposes. And so what I want to know is why was it beyond the discretion of the administrator, the trustees, whoever, to define compensation narrowly, I will grant you, to exclude whatever they were, the extra payments for the executive board service? Well, I think I have two responses to that, Your Honor. The first is that what the language actually says is that compensation shall not include the value of non-wage payments, even if such payments are considered income for tax purposes. It doesn't say considered wages for tax purposes. Obviously, you can get many forms of income for tax purposes, and only some forms of income are designated as wages. Suppose we called the executive board money, the $10,000 a year, which is actually a pretty tidy $833 a month. Suppose we called that bonus. Where would it fall, in your view, under this plan? I think that to begin with, we'd have to know why it's being called a bonus. Why would we have to know that? I mean, they've just put it in a different box. They, you know, you've got your monthly payment. Now we're going to give you some extra money because you're on the executive board. The reason is, is that the employer doesn't get to just call different portions of the amount that they pay you, whatever they want to call it, and then the trust fund accept it. Why not? With this kind of plan? I mean, if it were a plan that you had a different level of review. Because the employer doesn't have a level of review. The employer doesn't get to interpret the plan language. The plan gets to interpret the plan language. The employer is the one slapping a label on this and calling it whatever they want to call it. Well, when you look at the plan's definitions and what they exclude, they exclude overtime. So we know that all compensation is not really compensation. Sure. So what we have is the plan. So why isn't that reasonable to compare the overtime to the executive committee stipend? Because we don't know what the payment for the executive committee is. We just have an employer telling the plan, we're not calling it salary. We're calling it something else. Why don't we know that? We have a whole separate coding for it. It's paid quarterly and it's $10,000 a year. Why doesn't that define it pretty clearly? It doesn't define it as anything other than that the employer is saying it isn't salary. Well, would you agree that the company could cut, could decide to cut the executive committee stipend, say to $1,500 a year? Sure. For budget reasons? Sure, the employer can pay. And so therefore, if the company could just, for budget reasons, it could be a legitimate reason. Sure. They cut it to $1,500. That's not like salary, if they cut your client's salary by $10,000. I think it is. I have no reason to think that there's a difference between these two types of payment, other than that the employer says it is. And the employer isn't the one that gets to say it is. The pension fund has to decide whether or not there's a basis for distinguishing between these two types of payment. The pension fund has no basis, other than the employer saying, we called it something else. And you must be relying on the fact that it's a multi-employer pension fund. Yes. Which has set up these various categories. It's got to get all the employers to chip in the correct amount of money for their employees. But that takes you to another problem, which is that this employer, apparently, has been making appropriate contributions to the pension fund for the salary component, S-A-L-A-R component. But it's never thrown money into the pension fund for the executive board. Correct. And our position is that when the trustee who owes a fiduciary duty to my client, Mr. Rabinack, not to the employer, finds out that an employer has for years just decided that some portion of what it pays Mr. Rabinack for doing its job, it just doesn't have to make contributions on that. That the trustee has a duty to Mr. Rabinack to make sure that the employer is making proper contributions. Not to just accept it at its word that it's okay that we just decided not to make contributions on a significant percentage of what we pay this man. The employer doesn't provide them any explanation whatsoever as to why they're not paying. So under this approach, the employer... Well, they say they're not paying because they don't understand this to be within the definition of compensation. That's how I read that one sentence or whatever it is that is their reason. So they're not saying he isn't really on the board. They're not saying all sorts of other things. They're saying we don't regard e-board money as compensation. Right. They say we just decided not to call that compensation. We as the employer who have no right to decide what the plan terms mean, we just decided some portion of what we pay this guy, we're not going to make contributions on it. We're not going to tell you why. We don't have an explanation. It's not because this was for something other than doing his job. It's not because of reimbursement for expenses because, of course, that's something the plan came up with much later once we're up in the district court. It's just we don't regard it that way and we haven't been making contributions on it. So can I ask you about that? I mean, does the record anywhere show, let's say, where this executive board meets or what kind of expenses would be incurred by somebody on the board? I think, to answer your question, no, the record does not include these things. You decided to meet in San Diego? No. I can tell you I could offer things outside of the record. We've not done that because it's inappropriate to do. But I do think it's implausible to think that people who are members of an executive board working for a union are incurring $10,000 a year in expenses for attending meetings that are part of their regular job duties. And Mr. Abenak would have absolutely been able to offer evidence about the fact that there are no expenses. And, of course, nobody on the other side can point to any expenses. But we didn't offer things outside the administrative record because that would be inappropriate and we didn't expect to. It's like the old congressional envelope account. You don't have to report it. It's just there. I'm sorry? I said it's like the old congressional envelope account. You got $6,000 or $7,000 for envelopes you didn't buy. Right. I mean, Mr. Abenak is paying taxes on this money. The employer is reporting these things as wages that are paid to him. That's good. That keeps him out of jail. He had no reason to think that it was anything other than money paid to him for doing his job. And this is a man who is a high-ranking – I mean, he's a business representative. He's on the board. He makes decisions about how much he gets paid and why he gets paid and who gets paid. He could have offered explanations on these things. But there was never a point during the administrative proceedings that anyone gave him any reason to think that he had to explain that he's getting paid for doing his job because they never refuted that. They never said he wasn't getting paid for doing his job. They just don't explain it. They just say this money isn't – we're just not going to make contributions on that money. We think this sets a terrible precedent if a plan can just defer to an employer saying half of what we pay this guy. You know, here it's $10,000, but it could be whatever it is. We're just not considering that salary. The trustee takes that at the employer's word and says that's just fine. And the district court agrees with that. There's no standard here. It's standardless. That's the definition of arbitrary and capricious. And we think that's why this decision needs to be reversed. And I believe that that means that I should be reserving. Meet you in your rebuttal time. Yes, so I'm going to sit down. I need to save a sec. Okay. Mr. Lee. Good morning. I'm Desmond Lee on behalf of Appley UBC Pension Fund. So here's what bothers me about your position. First you say it's just not compensation. And then you come up with this argument that it's just sort of a lump sum for expense reimbursement. But a quick arithmetical operation tells you that this is $833 a month for expense reimbursement. And I've been musing about what that would buy, you know, kind of limo service to and from, you know, a very distant location. Walking around money. Yeah, walking around money. And the fact that this didn't come up in a way that he was able to come back and say, no, it's not expense reimbursement because my expenses are, you know, $25 for a cab to and from the meetings. It's nothing remotely like $833. I'm very concerned that just your say so, that this isn't compensation, is enough without any opportunity for him to test it. Well, I can answer that in a couple of ways, Your Honor. There are a number of, well, with respect to the amount of the expense, the stipend that's been paid to him. The stipend, I'll take your word for it, is $833 a month. Thank you. It could be viewed as a lot of money, but I think the key is whether or not. Expense reimbursement is a huge amount of money, month in and month out, with no evidence in the record, whatever, to suggest that that's it. And one place in your brief you argue that, you know, it must be expense reimbursement because he's already getting his salary, but it's just as plausible to think that he gets supplemental wage payments, stipend, whatever you want to label it, for his executive board. Well, I'd like to, I'm sorry, I'd like to address the statements he keeps making that we rely, or that the employer is able to make determinations on behalf of the plan in this case. The plan didn't also know what they were. They asked the employer. The employer gave them a response. This is what the reimbursements or this is what the stipends were for. And that if the employer, these type of statements can be relied on, as the Gallo and the Crotchet cases have set forth here. Why can they be relied on? It makes a difference to him if his last, if his highest three years have an extra $10,000 on each one, to the pension that he's going to be able to get. And if the fund isn't being diligent to make sure that employers are making appropriate contributions, that's a whole different problem. Well, that is correct, Your Honor. I think that they do need to, we understand the fiduciary obligations the plans have. What I should have said was, what is this money for? And I don't want it if it's not part of my compensation. What I think that the plan also had were other evidence that the reimbursements or the payments were differently coded. Extra payment is what it is. Well, they were extra payments, but they were differently coded. They were also paid, they were very, very differently timed as well. So what? I don't understand why that matters. The reason why is the quarterly payments were much differently timed than the weekly salary. So it's quarterly. The other problem is that the Illinois Wage Payment Act, and this is something he should have known, I think everybody knows the Illinois Wage Payment Act provides that for salaried employees, the latest you can pay a salaried employee is one month. When this is coming every three months, that should give you an indication this is not something that's reimbursed or this is not something that's paid for you as a wage payment. And I can quote you the cipher, that's 820 ILC 115-3. Going back to the Krawchuk and the Gallo cases, Your Honor, those allow, and in those particular cases, all the plan did there was to ask the sponsor, what are these payments for? And what they did was they relied on what the plan sponsor said. And there's no answer that makes any sense to that question here. And it's actually not Mr. Rubinick's problem if they're in trouble under the Illinois wage payment law, which may not even apply to the general term compensation. No, it would, though. In terms of whether or not, if it would be considered, for instance, what he's considering is wage or any type of wage payment of this type. But you're using a different term than the plan uses. The plan uses the term compensation. But he's using the fact that this is something that's compensation for his services. When that occurs, you can obviously say that this, no matter how much you think it may be, is clearly not or something very different than what is considered compensation for your services. Why isn't it extra compensation for his service on the executive board? It seems so simple. Well, I think for the reasons we stated in our brief, we have evidence here where it shows that, again, we're relying on the sponsor's intent, something that both, again, those two cases relied on. I'm not sure those are the statements that were relied on in those two particular cases. For his particular part, he could have always have asked the employer himself, just like the plan did, as to what the nature of these payments were. Why would he have any occasion to do that before the time comes to calculate his pension basis? Well, at the time the appeal was going on, for instance, at the time he wrote the letter, for instance, on August the 30th to the plan raising this particular issue, he could have easily have then asked the employer, what are these payments for? He could have obviously have done that, and if he would have asked the employer, his employer, the Chicago Regional Council of Carpenters, what this was about, he would have gotten the same answer. They're saying that this was never intended to be compensation for your services. It was something that was intended to be stipends for reimbursements that you may incur. Pardon me? A gift, a perk of the job. Well, for whatever that may be, I'd like to develop that answer. But it was part of his job. I mean, it was required because he was the business agent that he'd go to these meetings. That's correct. And these were for reimbursements that he may have incurred. And I think what happens with some employers is they will give you things like a car allowance, and a car allowance will sometimes be paid for you. There's nothing in the record to suggest anything like this happens. Because it's a way of an employer. You didn't give him a chance to explore this issue. Well, the issue with respect to that we submit is for in Gallo, they say that we have or that you're provided enough information to make a challenge in court to what's going on. What he should have done is to maybe, again, petition the board to submit for more information. He also makes the statement in his reply on page 8 that when he said that remand was not something that was appropriate in this particular case, that he doesn't need any more information to make an argument here. I think that he says at the very least the court should remand the case to the district court. No, I think that he says that he declined remand. If I'm reading it correctly, I'm sorry, on page 11 I was replying. Yeah, I was on page 8. I'm sorry. I'm sorry. His comment on that is on page 11. Unless he can expand the record. I mean, I think he doesn't want to remand based on this record. But his argument, though, is that the term of compensation is pretty clear. Again, we go back to the standard of abuse of discretion here. The trustees have a right. And then he does say, at the bottom of 11, Rabinick requests a remand in the alternative so that he may have an opportunity to show that CRCC did not pay him $10,000 a year to reimburse expenses he never incurred. But he also says that he doesn't. Well, he said that he would take that. He would say that he would take it if it was ordered. But obviously that would be something he wouldn't be able to disagree with if the court did order a remand. The problem with his point is that this is an abuse of discretion review. And he may be able to try and pick apart on a de novo or even a strict scrutiny basis. And that's basically what he's doing here. He's running afoul of the standard of discretion in this particular case afforded to the plan here. And the plan, all they have to do is have an interpretation of the stipends here that is not downright unreasonable. When they see that these are coded differently, they have statements from the plan sponsor, that you have all the other evidence that was outlined in Travis Ketterman's letter. For instance, this has never been considered a salary. They have never had any contributions that were made on these particular things. This is clearly a reasonable interpretation, much less a downright unreasonable interpretation of this particular issue. And that, I think, is ‑‑ I'm sorry. Thank you. Thank you very much, Mr. Lee. I think we had your point. Anything further, Mr. Morales-Joyle? A couple quick points. On this idea of the plans repeatedly citing to Gallo and referencing that they're allowed to take the plan sponsor's explanation into account. And I think the cases, Gallo and other cases, are not dealing with a situation where you have a multi‑employer plan and one employer just saying we don't have to make contributions on this money because we decided we don't have to. It's considering a situation where an employer sets up a plan to take care of its employees and says this is what we meant by the language that we drafted in our plan. That's a very different scenario than we have here. I think when counsel makes a number of suggestions of what Mr. Rabinette could have done, he could have asked his employer for a better explanation. Well, he says himself he would have gotten the same answer, and the point is the employer didn't give an answer other than, well, because we said so. And that's not good enough. Trustees shouldn't accept that this is standardless. The trustee does have the right to ‑‑ they have discretion to make decisions, but they have to make those decisions on the basis of standards. Otherwise, it is arbitrary and capricious. And if the standard is just we take whatever the employer says as, you know, to be the truth, then that's not a standard, and that's why this case should be reversed. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement.